Barrett *v.* First Mechanics National Bank et al. (Girard Trust Co., Appellant).

Argued October 4, 1938. 

 Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*H. James Sautter,* with him *Barnes, Biddle & Myers,*
for appellant.

*T. J. Mullaney,* of *Hirst & Mullaney,* for appellee.

OPINION BY KELLER, P. J., December 16, 1938:

It was decided, as early as 1788, that a foreign at-
tachment would not lie in this Commonwealth against
the executors of a decedent as defendants, and that if so
issued it would be quashed: *Pringle v. Black's Execu-
tors,* 2 Dallas 97. This ruling was cited with approval
in *Bushel v. Commonwealth Ins. Co.,* 15 S. & R. 173,
179, and *Shewell v. Keen,* 2 Whart. 332.

The Act of June 13, 1836, P. L. 568, (Secs. 43 to 77

of which relate to foreign attachments), as amended by the Acts of March 30, 1905, P. L. 76, and June 21, 1911, P. L. 1097, made no change in the law in this respect. The question came squarely before the Supreme Court in *East Bangor Consolidated Slate Co. v. Badger,* 250 Pa. 422, 95 A. 559, where a foreign attachment was issued by the plaintiff against Walter I. Badger, Executor of Charlotte Thompson Ames Brown, deceased, under which the sheriff attached the real estate of the decedent, who had been a resident of Massachusetts. On the defendant's motion the writ was quashed, and on appeal the Supreme Court affirmed. Mr. Chief Justice Brown, speaking for the Court said: "Foreign attachment is a purely statutory proceeding, and, being in derogation of the common law, the provisions of the statute authorizing its issue are to be strictly construed. The writ 'may be issued against the real or personal estate of any person not residing within this Commonwealth, and not being within the county in which such writ shall issue at the time of the issuing thereof, ...... in all actions ex contractu, and in actions ex delicto for a tort committed within this Commonwealth': Act of June 21, 1911, P. L. 1097. These words clearly show that a writ of foreign attachment may issue only against a living person against whom a claim is made for breach of contract by him or for a tort committed by him within this State ...... The act contemplates a breach of contract or a tort committed by a defendant having a residence somewhere outside of the Commonwealth; dead persons have no legal residence anywhere. In dissolving the attachment the learned court below followed the rule announced as early as 1790, in *Mc-Coombe v. Dunch et al., Executors,* 2 Dallas 73, and *Pringle v. Black's Executors,* 2 Dallas 97. The rule then announced has never been departed from, but learned counsel for appellant now insist that it ought no longer to be followed, because it never had any reason to support it. The first answer to this is that the

statute not only supports it, but calls for its enforcement, for, as just observed, the defendant in a writ of foreign attachment must be one living outside the Commonwealth, the breach of whose contract, or the commission of whose tort within the Commonwealth, is the basis of the claim of a plaintiff invoking the writ. A second answer is that, if a foreign personal representative of a deceased nonresident could be made a defendant in a foreign attachment, there would be interference with our statutes regulating the distribution of decedents' estates. If there are any assets of Charlotte Thompson Ames Brown in this State which are subject to liability incurred by her, her creditors can readily reach them by raising an administration here. By such a step one of them would not be preferred to another. If a foreign executor comes within the jurisdiction of our courts, he is liable to a suit by a resident creditor of his decedent: *Laughlin & McManus v. Solomon,* 180 Pa. 177; but compelling a foreign executor to come within our jurisdiction is quite a different matter, and a writ of foreign attachment is a process by which to commence a personal action and compel an appearance: *Raymond v. Leishman,* 243 Pa. 64."

Nothing in the latest amendment of April 24, 1931, P. L. 44, 12 PS Sec. 2891, changed the law in this respect. See also *Reynolds v. Nesbitt,* 196 Pa. 636, 46 A. 841, which, for the second reason given by Chief Justice BROWN above, held that the death of the defendant in a writ of foreign attachment, before final judgment against him, works a dissolution of the attachment.

The defect is a fundamental one, and such as to put the plaintiff completely out of court: *Pasquinelli v. Southern Macaroni Mfg. Co.,* 272 Pa. 468, 116 A. 372.

The learned court below refused to quash the writ because in its opinion, the affidavit of cause of action set up a claim for services rendered by the plaintiff pursuant to a contract "entered into by the defendants per-

sonally." But the affidavit shows that the alleged contract was made by the defendants as executors of August Mautz, deceased, with respect to the assets of the decedent's estate, and the funds sought to be attached were not the individual assets of the executors but the assets belonging to the decedent, which came into the hands of the defendants as his executors, and it is out of the funds of the estate that the plaintiff seeks payment, for it is the funds of the estate, not of the individual executors, which the plaintiff has attempted to seize by his attachment.

While the plaintiff may have a cause of action against the defendants personally, or against such of them as employed him, he did not bring his action in that form. He did not aver, as he was bound to do in order to sustain his cause of action in such case, that the defendants, as individuals, had property, etc., within the jurisdiction of the court issuing the attachment. "To support the writ, it is as necessary that defendant have property within the jurisdiction as that he be beyond it. Both are essential *and must be averred"*: *Mindlin v. Saxony Spinning Co.,* 261 Pa. 354, 356, 104 A. 598; *Kennedy, Inc. v. Schleindl,* 290 Pa. 38, 137 A. 815; *Falk Co. v. American Ry. Exp. Co.,* 79 Pa. Superior Ct. 99.

It is a matter of substance, not form; *for even in actions where the defendant has been served,* a change of the defendant from a representative to an individual capacity, or vice versa, cannot be made after the statute of limitations has run, for it involves a change of parties: *Stine v. Herr, Admx.,* 78 Pa. Superior Ct. 226; *Bender v. Penfield,* 235 Pa. 58, 60, 83 A. 585; *Garman v. Glass,* 197 Pa. 101, 46 A. 923; *Slakoff v. Foulke, Trustee,* 323 Pa. 352, 361, 186 A. 79.

In the present case, the defendants have not been served. They have not appeared and are not in court. The foreign attachment was issued against them in their representative capacity, and in order to compel their appearance in that capacity the property of their decedent

was attached in the hands of the garnishee. A right of action against the defendants in a different capacity from that in which the attachment was brought cannot be substituted by amendment. In *Bender v. Penfield,* supra, (p. 59), Mr. Justice STEWART, speaking for the Supreme Court said: "The action had been brought against the estate of a decedent; the amendment bringing upon the record the appellee as the legal representative of the estate, was entirely proper; it introduced no new party, since in the event of recovery the judgment would simply be de bonis testatoris; but by the second amendment the appellee, against her protest, was introduced upon the record to defend not in her representative but in her individual capacity, and had judgment been obtained it would have been de bonis propriis. No truer test can be applied in determining whether a proposed amendment involves a change of parties to the action. If it may involve in personal liability one who was not made a party originally, the amendment, if objected to, should be disallowed, for no one may be held to answer except as required by due process. The negligence here charged was that of the estate of William Weightman; by the first amendment, acquiesced in, that estate was in court to answer through its legal representative, such representative being in court in no other capacity; by the second amendment another and wholly different party, in substitution of the one originally proceeded against, was charged with liability for the alleged negligence, and that too, after right of action against such party had been lost by lapse of time. The fact that the party so introduced individually, happened in this case to have been the legal representative of the estate originally complained against, is a matter of no consequence. The rule admits of no exception based upon such accidental circumstance. Had the legal representative of the Weightman estate been some other than the appellee, it could not be for a moment contended that an amendment could properly be made

bringing such party upon the record as a defendant. The principle of the rule applies in the one case as directly as in the other. As was said by this court in *Garman v. Glass,* 197 Pa. 101, in discussing the question of amendments under the statute, 'Rights of action in different capacities, even though in the same individual, cannot be mixed and interchanged in this way.'" And in *Slakoff v. Foulke, Trustee,* supra, the Supreme Court, speaking through Mr. Justice MAXEY, (p. 361), said: "The court below also correctly held that the defendant was not sued in his individual capacity and that the words 'Surviving Trustee, under the Will of Charles M. Foulke, Deceased' were not merely descriptio personae and surplusage."

An affidavit of cause of action in a foreign attachment cannot be amended as to matters of substance: *Kohl v. Lyons,* 125 Pa. Superior Ct. 347, 189 A. 498. If defective and not amendable the writ will be quashed: *Ibid.* pp. 350, 351. Such amendments, in foreign attachments, are limited to matters of form: *Frankel v. Donehoo,* 306 Pa. 52, 55, 56, 158 A. 570.

The attachment in this case attempted to seize and attach in the hands of the garnishee property of the estate of August Mautz, deceased, which the law had committed to the custody and control of the executors of his will. Under our law that cannot be done; nor can that process be used to compel the appearance of the defendants in their individual capacity. The rule to quash the writ should have been made absolute.

The assignment of error is sustained. The order is reversed and the rule to quash is made absolute.[1]

---

[1] See Act of April 26, 1917, P. L. 102, Sec. 1.