## Horizon Financial v. Giamo

*William F. Schroeder,* for plaintiff.
*Richard J. Molish,* for defendants.

GARB, P.J., November 8, 1985—Defendants have appealed from our entry of summary judgment.

This is an action in ejectment. Plaintiff is a lending institution which acquired title to the premises in question as a result of a sheriff's sale held pursuant to its foreclosure on its mortgage. The property in question is a shopping center and defendants are the tenants of one of the premises in the shopping center.

We believe that the record is appropriate for the entry of summary judgment, there being no material facts in dispute. Summary judgment may be entered if the pleadings, deposition, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Furthermore, the court must view the record in the light most favorable to the nonmoving party. Amabile v. Auto Kleen Car Wash, 249 Pa. Super. 240, 376 A.2d 247 (1977); Bowman v. Sears, Roebuck & Company, 245 Pa. Super. 530, 369 A.2d 754 (1976); and Husak v. Berkel, 234 Pa. Super. 452, 341 A.2d 174 (1975). A summary judgment is to be entered only in the clearest of cases where there is not the slightest doubt as to the absence of a triable issue of fact. Granthum v. Textile Machine Works, 230 Pa. Super. 199, 326 A.2d 449 (1974).

The undisputed facts established the following. On February 1, 1977, defendants entered into a five-year lease for the premises with the mortgagor, the original owner of the premises. That lease was for a period of five years and contained an option to renew for a second period of five years. On June 30, 1977, the mortgage in question and an accompanying bond and warrant were executed and were re-

corded on July 1, 1977. On January 31, 1982, defendants exercised their option to renew for an additional period of five years.*

On January 22, 1985, judgment by confession was taken by plaintiff on the mortgage and accompanying bond. On March 8, 1985 a sheriff's sale was held on that judgment and the property purchased by plaintiff.

Defendants assert that there is another material question of fact unresolved on this record. One of the defenses which they raise is to the effect that they did not understand paragraph 16.01 of the lease dealing with subordination and attornment. As will be demonstrated below, the application of that section represents only one of the two reasons for the entry of our judgment. In any event, as we will state subsequently, their unilateral misunderstanding is irrelevant to the implementation of this contract provision.

Primarily, the rights of tenants with respect to purchasers at judicial sales is set forth in the act of April 6, 1951, P.L. 69, Article III, § 304, 68 Purdon's Statutes 250.304, in relevant part as follows:

"The right of possession of a tenant shall be deemed paramount to that of a purchaser at a judicial sale if and only if the *letting* to him shall pre-

---

* This is a question of fact which conceivably is in dispute. There is nothing on this record to establish the fact of the renewal other than the defendants' assertion in their answer. Plaintiff denies knowledge and demands proof. For purposes of this summary-judgment motion we do not deem this question of fact significant. Obviously, if the lease had not been renewed, then defendants herein would have no claim of right to the premises as against the purchaser at the judicial sale. As will be demonstrated below, we believe that plaintiff as the purchaser at judicial sale has the superior right to possession even if the option had been exercised.

cede in point of date the entry of the judgment, order or decree on which sale was had and also shall precede the recording or registering of the mortgage, deed or will, if any through which by legal proceedings the purchaser derives title, . . ." (Emphasis supplied.)

Therefore, by the application of this Act of Assembly, if the lease is prior in time to the mortgage on which the judicial sale was held, then the mortgagee's rights are subject to the prior lease and he has no superior right by which he can extinguish the lease by foreclosure, nor can he bring ejectment against the tenant for default of the mortgagor. Conversely, where the lease is executed subsequent to the mortgage, the mortgagee has a superior right to the lease and upon foreclosure extinguishes the lease and can succeed in an action in ejectment against the tenant. See Malamut v. Haines, 51 F. Supp. 837 (D.Ct. M.D., Pa. 1943), and Picone v. Mowat, 299 Pa. Super. 525, 445 A.2d 1253 (1982). The question, therefore, is whether the exercise of the option for a second five-year period which clearly occurred after the execution and recordation of the mortgage constitutes a subsequent "letting" of the premises in question for purposes of the application of the foregoing Act of Assembly.

This exact question was considered and decided in North Penn Savings & Loan v. LaMar, Inc., 9 D.&C.3d 269 (1977), in a well-reasoned opinion written by Judge Conaboy. The chronology of events in that case closely parallels those here, the lease containing a similar renewal clause. Therein, the court held that the superior right of the lessee to possession of land in a lease executed prior to a mortgage recordation will not survive upon the exercise of an option to renew when such option will only become binding on the parties subsequent to

the intermittent mortgage. In construing the Act of Assembly in terms of legal theory, Judge Conaboy writes as follows:

"Restated in terms of theory this section has been read to mean that 'though a leasehold interest is personalty, usually described as a chattel real, it is nonetheless an estate carved out of the fee, and treated as such for purposes of divestiture. Thus the lease is not divested in an execution sale on a subsequent encumbrance on the landlord's reversionary interest. In such case, the tenant's right of possession is superior to that of the purchaser at sheriff's sale.' Brown, Execution Sale: Lien Divestiture and Distribution of Proceeds in Pennsylvania. 58 Dick. L. Rev. 244, 262."

In applying that dogma, Judge Conaboy comments that the importance of that statement is its conclusion that under the Act of Assembly, the only important issue is whether the inception of the lease term preceded the effective date and filing of the mortgage. With respect to the exercise of a covenant or option to renew in a preexisting lease, he holds that such a covenant to grant an estate, and not a present demise, as distinguished from a covenant to extend, calls for a new lease or a formal extension of the existing one. As such, for purposes of the application of the Act of Assembly, it is a "letting" at the time that the option is exercised.

Therefore, in the case before us, the mortgage, bond and warrant were executed and the mortgage recorded prior in time to the lease and therefore is paramount. As such, plaintiff, as the purchaser at the judicial sale, is entitled to possession.

Secondly, we believe that paragraph 16.01, subordination and attornment, of the lease likewise works a subordination of defendants rights to the judicial

purchaser. That section provides in relevant part as follows:

"Tenant agrees: (a) That except as hereinafter provided, this lease is, and all of tenants rights hereunder are and shall always be, subject and subordinate to any mortgages or security instruments (collectively called 'mortgage') that now exists, or may hereafter be placed upon the demised premises or the shopping center or any part thereof and to all advances made or to be made thereunder and to the interest thereon, and all renewals, replacements, modifications, consolidations, or extensions thereof; . . ."

We believe that the clear import of such a clause is to subordinate the lease to any subsequently executed mortgage. Defendants' contention at this late date that they failed to understand that provision will not help. A party to a contract has a duty to read it before executing it and his failure to do so will not excuse his ignorance of its contents. Rosner v. Zurich Insurance Company, 197 Pa. Super. 90, 177 A.2d 30 (1962). Defendants were legally bound to know the terms of the contract in which they engaged with their landlord. Montgomery v. Levy, 406 Pa. 547, 177 A.2d 448 (1962). There is no evidence nor even any assertion of any mutual mistake regarding the terms of the lease agreement. In order to disturb the plain terms of a contract on the basis of some mistake or misunderstanding, the mistake must be mutual to all parties to the contract. Bollinger v. Central Pennsylvania Quarry Stripping and Construction Company, 425 Pa. 430, 229 A.2d 741 (1967). Therefore, this contention being irrelevant, the question of whether it is a fact in issue cannot stand in the way of the entry of summary judgment.

For the foregoing reasons, we entered our summary judgment.

*Editor's note:* The appeal in this matter to the Superior Court was discontinued.